NATIONAL BANK OF JEFFERSON ET AL. v. W. H. GOOLSBY ET AL.

No. 1519.

### 1. Injunction Against Receiver—Jurisdiction—Trial of Right of Property.

Suit was brought in M. County against a corporation, and an attachment issued therein was levied upon certain property in H. County, which the corporation had transferred to one G. In another suit afterwards brought in M. County, a receiver was appointed for the corporation, and ordered to take all of its property into possession, including that in H. County, which had been claimed by G. from under the levy of said attachment by affidavit and claimant's bond under the statute for the trial of the right of property, his claimant's action therefor being then pending in the District Court of H. County. Held, that as the latter court

had jurisdiction of G.'s action for the trial of the right to the property there, it also had authority to issue an injunction upon his petition therefor to restrain the receiver from interfering with said property; and as G. was not a party to the receivership proceedings, and the injunction was not to restrain any process issued from the court of M. County, but was only to restrain the receiver, the injunction was properly returnable to the District Court of H. County, from which it issued.

2. Corporation—Power of Manager to Convey Property—Presumption.

Where the manager of a corporation acting within the apparent scope of his authority sells part of its property, his power to do so will be presumed in the absence of proof that he did not possess such authority.

3. Insolvent Corporation—Sale not Fraudulent, When.

A sale by a corporation of a part of its assets in order to pay a debt to a bank is valid as against attaching creditors of the corporation, where the purchaser knew nothing of the financial condition of the corporation except such indebtedness to said bank, and was not guilty of fraud in the transaction, and the corporation was not then financially embarrassed beyond a reasonable expectation of being able to continue its business, and such sale did not necessitate the cessation of business by the corporation.

APPEAL from Hunt. Tried below before Hon. E. W. TERHUNE.

*Todd & Todd, L. S. Schluter, J. H. Culberson,* and *Craddock & Looney,* for appellants.—1. All writs of injunction granted to stay proceedings in any suit shall be returnable to and tried in the court where such suit is pending. Rev. Stats., art. 2880; Hendrick v. Cannon, 2 Texas, 250; Seligson v. Collins, 64 Texas, 314.

2. An insolvent private corporation possesses no charter power to sell for the purpose of preferring in payment a debt due by it, where the property sold is necessary to it as a successful going concern. 86 Texas, 143; 30 S. W. Rep., 505.

*Perkins, Gilbert & Perkins,* for appellees.—1. Where property is in the custody of the law, the court having control of the same can protect its jurisdiction by a writ of injunction. Railway v. Lewis, 81 Texas, 5; Bock v. Perkins, 139 U. S., 639; Kern v. Heydekoper, 103 U. S., 485; Deitzsch v. Heydekoper, 103 U. S., 494; Sharon v. Terry, Fed. Rep., 365.

2. The record does not show that the injunction herein issued was granted to restrain the execution of the judgment of the District Court of Marion County. One claiming to act under the decree of a court may be personally enjoined by courts other than the one rendering such a decree.

3. Where a writ of attachment issues in one county and is sent to another, and there levied upon personal property, and affidavit and bond are made for the trial of the right of property, the same are returnable to the court for the county where the levy was made, and the property is thereby placed in the custody of that court. Rev. Stats., art. 4829.

RAINEY, ASSOCIATE JUSTICE.—*Findings of Fact.*—1. The East Line Lumber Company was admitted to be a corporation, incorporated

under the laws of the State of Texas, for the manufacture and sale of lumber.

2. Geo. W. Brown was the treasurer and general manager of said company on January 27, 1893, and has been such for four or five years.

3. On said last named date, said Brown sold the property in controversy to appellee for a consideration of $7609.57, which sale was made by him for the purpose of paying the debts of said lumber company, and the proceeds were so applied. All of this amount, except $563.92, was applied to the payment of a debt to the Greenville National Bank. The $563.92 was given to said Brown in New York exchange, payable to him as treasurer and general manager of said lumber company. Appellee, having no money, arranged before the sale with W. A. Williams, who was cashier of the Greenville National Bank, that he (Williams) would surrender the indebtedness of the bank against the East Line Lumber Company, and pay the balance of the purchase price to Brown, and take Goolsby for the debt and carry him as the bank had formerly carried the lumber company, and the sale and transaction were closed up accordingly. The price paid was the full value of the property in controversy.

4. Appellee, at the time he purchased the property in controversy, was not manager of said lumber company's yards at Greenville, Texas, but had been such manager since January, 1890, up to January 1, 1893, at which time Ot. Welch was put in charge. The planing mill, saw mills and place of business of said lumber company were situated at Orr's Switch, in Marion County, Texas, about 120 miles from Greenville. Appellee had never been there prior to his purchase of said property, and had not had anything to do with any of the officials of said company, except said Brown, who was in the habit of going to Greenville about once in every one or two months, and appellee made a report to said Brown every morning of the previous day's business. He ordered from the mills such lumber as the trade demanded, and deposited the money received in the Greenville National Bank to the credit of said lumber company. Appellee knew that Brown was selling for the purpose of paying the debt of the company to the Greenville National Bank, but did not know the amount of such debt. He did not know anything about the company's indebtedness except some amounts they owed in Greenville, and did not know they were pressed for money. He bought the property for the purpose of engaging in the lumber business, and believed he was getting good title to it, and knew nothing to cause him to doubt it, and made the purchase in good faith. Appellee has paid about $6000 on his indebtedness to the bank, and renewed the balance.

5. The paid up capital stock of the East Line Lumber Company at the time of the sale to appellee was $50,000. The sale was made because the company did not have the ready money to pay its debts, and the expectation was to operate the saw mill and planing mill left, and realize on the lumber that they had on hand.

At the time this sale was made, the company had not contemplated ceasing business, nor was the sale to appellee such an act as caused the suspension of business by said company. While said corporation was financially embarrassed, it was not insolvent; there existed a "reasonable or well founded hope for a continuance of its business."

6. The National Bank of Jefferson and W. B. Ward each sued the East Line Lumber Company in the District Court of Marion County, Texas, on January 30, 1893, and a writ of attachment was issued in each of said suits, directed to Hunt County, and on the same day these writs were levied by the sheriff of Hunt County on the lumber yard properties involved in this suit then in the possession of W. H. Goolsby, who claimed the property and made affidavit under the statute, and gave claim bond in the sum of $10,000 (the property being by the sheriff valued at $5000), with W. A. Williams, W. A. Garey and C. A. Langford as sureties, and on January 31, 1893, the affidavit and bond were approved and the property levied upon redelivered to defendant Goolsby.

7. On February 1, 1893, in a suit pending in the District Court of Marion County, Texas, wherein Erastus Jones was plaintiff and the East Line Lumber Company was defendant, the Hon. Jno. L. Sheppard, judge of the fifth judicial district of Texas, made the following order, to-wit: "The State of Texas, Bowie County. In the District Court, Marion County, Texas. February 1, 1893. On this day came on to be heard the application of Erastus Jones to appoint a receiver of the East Line Lumber Company, and after hearing said application, the court is of the opinion that a receiver should be appointed as prayed for by said plaintiff.

"It is therefore ordered by the court that W. N. Bemis be and is hereby appointed receiver of the East Line Lumber Company, and his bond fixed at ten thousand dollars. The said W. N. Bemis immediately upon qualifying as said receiver as required by law, is hereby ordered to at once take into his possession all property of the said East Line Lumber Company, as heretofore owned and operated by said company, consisting of lands, goods, saw and planing mills, lumber, cattle and mules, and books and notes, accounts and bills receivable of every character and kind, and all property of every character, and especially the planing machine sold by the treasurer of said company to Tom Torrans, the lumber yard at Greenville, consisting of lumber, yard, office and books, and all other property thereto belonging to said company and sold by said treasurer of said company to one W. H. Goolsby, the lumber near Grant, Marion County, Texas, sold by G. W. Brown, treasurer as aforesaid, to one Frederick Walsh, the saw mill and fixtures sold by said Brown, treasurer as aforesaid, to one Frank Brown, said property situated in Marion County, Texas, the property levied on by J. M. DeWare, sheriff of Marion County, Texas, by virtue of writs of attachment issued out of the District Court of Marion County, Texas, the property levied on by John Oneal, sheriff of Hunt County, Texas, by virtue of writs of attachment issued out of the District Court of

Marion County, Texas, and the said receiver aforesaid is hereby fully authorized and empowered to take into his possession any and all property not herein specified, wherever found, and hold all property so possessed subject to the future orders of this court.

"And the said defendant Torrans and defendant Welsh and defendant Goolsby and defendant Frank Brown, G. W. Brown and J. M. DeWare, sheriff, and John Oneal, sheriff, are each respectfully ordered to turn all said property over to said receiver Bemis, as aforesaid, and the district clerk of Marion County, Texas, upon the application of W. N. Bemis, receiver as aforesaid, is hereby ordered to issue a writ of possession, directed to the sheriff or any constable of Marion County, Texas, directing him to place said receiver in full possession of all said property, and said officer to whom same is directed shall immediately execute same, and said receiver, after he shall receive possession of said property, is hereby authorized to control, operate and dispose of same as may from time to time appear to the best interest of all the creditors of said company, subject to the approval of the court, and to fully control, manage and operate said property under the orders of this court."

The evidence fails to show that appellee was a party to the proceedings in which Bemis was appointed receiver.

8. On February 3, 1893, the said W. N. Bemis, receiver, demanded of W. H. Goolsby the possession of said properties, whereupon Goolsby made application for an injunction, which, after hearing, was on February 6, 1893, granted by order as follows: "Wherefore it is ordered that the clerk of this court issue the writ prayed for, upon complainant Goolsby executing bond conditioned as required by statute, in the sum of $6000, with two or more good sureties, to be approved by the clerk." On February 6, 1893, Goolsby entered into bond as required by said order in the sum of $6000, conditioned as required by statute, payable to W. N. Bemis, with W. A. Williams and W. A. Garey as sureties. W. A. Williams was at the time cashier of the Greenville National Bank, and W. A. Garey was an employe of said bank.

*Conclusions of Law.*—1. The District Court of Hunt County had jurisdiction to try the injunction suit, as well as the suit for the trial of the right of property. As the action for the trial of the right of property was pending in the said court at the time the injunction was sued out, the property was in custodia legis and within the jurisdiction of same, and said court had authority to grant and hear the injunction in aid of its jurisdiction. Revised Statutes, arts. 4823, 4829; Railway v. Lewis, 81 Texas, 5.

2. The property was in the actual possession of appellee, he having purchased it and taken possession thereof before the institution of proceedings to appoint a receiver. He was no party to the receivership proceedings, and was not bound thereby. No writ was issued by the court authorizing a seizure of the property, the injunction was to restrain the receiver, and not process from the District Court of Marion

County; the writ of injunction was therefore properly returnable to the District Court of Hunt County. Van Ratcliff v. Call., 72 Texas, 491. See High on Receivers, secs. 137, 145, 149, 150, 157; Parker v. Browning, 8 Paige, 388.

3. The power of Brown, as manager of the East Line Lumber Company, to dispose of the property in controversy to appellee, being within the scope of his authority, will be presumed, in the absence of proof that he did not possess such authority, and the burden to show the want of authority was on appellants, and this they failed to do.

4. As Goolsby knew nothing of the financial condition of the lumber company, except the debt to the Greenville National Bank, and as he was guilty of no fraud in the transaction, and as said company was not financially embarrassed beyond a reasonable hope or expectancy of being able to pay out and continue its business, and such sale not constituting such an act as necessitated a cessation of business by said company, the sale to appellee was valid and conveyed to him a good title. Lyons-Thomas Hardware Co. v. Manufacturing Co., 86 Texas, 143.

The judgment is affirmed.

*Affirmed.*

Delivered January 25, 1896.

RAINEY, ASSOCIATE JUSTICE.—*Additional Conclusions of Fact.*— In compliance with the motion of W. N. Bemis, receiver, we find the following additional conclusions of fact, to-wit:

1. The Greenville yard and properties sold by Brown to Goolsby, was the only yard owned and operated by the East Line Lumber Company exclusively for the retail of lumber.

2. At the time Goolsby bought, he knew that Brown a short time theretofore had attempted to sell the Greenville yard to another for the purpose of paying the debt to the Greenville Bank.

3. The indebtedness of the East Line Lumber Company amounted to about $35,000. The assets were as follows:

Milling properties and real estate..............$30,000

Notes and accounts......................... 30,000

4. At the time of the sale to Goolsby, the assets would not have sold for enough to pay the indebtedness.

5 At the time of sale to Goolsby, the said company had not procured from its creditors an extension of time on its indebtedness.

6 There is no evidence, we take it, going to show that Goolsby was, or was not, a party to the receivership proceedings in the District Court of Marion County, Texas.

The foregoing conclusions are founded on the findings of the court below, which are supported by the evidence.

Delivered March 21, 1896.